Joseph Klappitsch, Appellant to Dir International & Mr. Zarkman This appeal raises both constitutional and statutory construction issues. Let me start with the constitutional issue. Insurance Code Section 533.5 violates due process. Before we begin on the constitutional issue, if you can address the threshold question. It appears the District Court didn't address this issue. Has there been waiver or forfeiture here? Why didn't the District Court address this issue? The District Court did not address this issue. I would note first that the argument of waiver is not raised in the answering brief. And under this court's authority, Dryer 805 F3rd at page 1277 and the Rattlesnake Coalition case 509 F3rd at page 1100. That means that it's been waived for purposes of appellate review. The issue was squarely raised in the briefs down below. And I would refer this court to the opening motion, which is docket. I'm sorry, the opposition, which is docket number 31 at page 28. The issue is raised. And then in the motion, there are cross motions for summary judgment at docket number 24 at page 27. And docket 44, which is the reply at pages 21 and 23. The issue is squarely raised. It wasn't addressed by the court, but it was raised by the parties. And we have brought it up on appeal, and it's been fully briefed by the parties. We think it should be addressed by the court, despite the fact that the District Court declined to address it. To get back to the constitutional issue. Let me ask you a couple of questions before you go further to your argument. This is a facial challenge, correct? I think it's both. It's a facial challenge, and it's an as-applied challenge. All right. I have trouble with where you got your as-applied argument, but I now understand. Are you only challenging the prohibition on the ability of the insurance company to defend the action, not to indemnify? So the constitutional issue goes squarely to subdivision B of the statute, 533.5, subdivision B, on the duty to defend. We are not claiming that subdivision A is unconstitutional. So the constitutional challenge is solely the duty to defend. Is there any court who has previously held that a civil litigant has a right to its preferred representational choice of counsel in a civil litigation? Honestly, I don't quite understand the preferred representational choice of counsel. Well, I didn't ask you to understand. Is there any court that previously said that a civil litigant has the right to have the counsel of his choice in a civil litigation? Yes. What? That's been held repeatedly by the courts. Where? Patashnik. Okay. Is that your best case? Patashnik, Anderson, and Roberts are three cases. I'll give you the citation. I've got the citation. You don't have to give me the citations. I just want to know where you are going to go. All right. Now back to your argument. Okay. Got it. So the due process right to counsel in civil cases is established, as I noted, in the Patashnik, Anderson, Roberts cases. Also, in the Supreme Court decision of Powell, the court refers to the right of counsel in both the civil and criminal context. So it's been recognized by the U.S. Supreme Court as well. And our position is that there are three aspects of this statute that render it unconstitutional. The first is the statute's trigger. The statute invalidates a defendant's right to defense based solely on the government's unproven allegations. There's no judicial determination here. There's no evidentiary hearing. It's just gone. The second problem is the statute's target. The statute invalidates valuable contractual rights that are untainted by and completely unrelated to the alleged wrongdoing and that are specifically earmarked for the defense of lawsuits. And the third problem is the statute's scope. Because California's unfair competition law applies broadly to any violation of any law, this statute amounts to an on-off switch for the government. The government can, it has the power under the statute, depending on how it pleads the case, to decide whether anyone it sues can have an insurance defense. And I think this case provides a perfect illustration of this problem. The government alleges that Adair and Mr. Zarkman violated nine different statutes and regulations that are set forth in their complaint. Had the government filed a nine-count complaint against my clients, there would be no issue. We wouldn't be here today. There would clearly be indemnity. There would clearly be a duty to defend. The problem is that the statute, the UCL statute, the unfair competition statute, allows the government to package those nine violations of nine other statutes and regulations into a single violation of the unfair competition law that's predicated entirely on these borrowed violations of other laws. And so what it does is the government can simply, by the way it pleads the case, force everyone that it sues to abandon their insurance defense. Now perhaps you have a better argument if you were making, or you say you are, an as-applied challenge. You show that your client can't afford counsel or can't afford the counsel that insurance would have provided. But for all we know, maybe your client has tens of millions of dollars in the bank and can afford to pay $1,500 an hour for counsel. So I don't understand how you said to Judge Smith it's an as-applied challenge. If I could, Your Honor, let me explain the difference between the facial challenge and the as-applied challenge. The facial challenge says that the government doesn't have the power to pass this kind of statute, giving it an unfair advantage in litigation. The as-applied challenge says, now let's turn to what happened in the specific facts of this case. And what happened in the specific facts of this case is after my client received, my clients, because this statute applies both to businesses and their employees, and so one of my clients is Mr. Zarkman, individual employee of the company. After they received this, they tendered this to their STAR for defense. STAR looked at it, said we find that there's coverage, and paid for a year and a half of the insurance defense cost, and over $2 million, and would have continued to pay those funds had it not been for the government then interfering with the specific provision of the defense in this case by writing a letter and saying you've got to stop that, you can't pay this money. So the government in this specific case took action that was even above and beyond what we think, and that gives rise to sort of the as-applied challenge. If I could turn. Let me talk to you. Do you know the case of Kaplan and Drysdale versus U.S.? I do. Okay. It says due process considerations have only been held to prohibit government interference with respect to a civil litigant in the following situations. Ability to effectively consult with counsel. The amount of time to retain counsel. The ability to communicate with counsel. The ability to consult with counsel regarding settlement. That's it. Now, none of those relate to this case. You're right, Your Honor, and in fact. And so in that particular situation, it also says a defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice. And therefore, I'm still finding your, if you will, Potts Potashnik or any of those other cases. I'm not finding they're really a good case for you to rely. Well, let me say that the Kaplan-Drysdale case, I think, has to be viewed through the light of the Supreme Court's decision in Luis. And Luis and Stein are the two critical cases here for purposes. And I would encourage the court, if you read only two cases, read Luis and Stein. In Luis, the Supreme Court held that a similar federal statute that allowed a court to freeze untainted assets before trial violated the Sixth Amendment right to counsel. And the court emphasized in that case the defendant is entitled to use his own untainted assets to fund his defense. In fact, it very colorfully distinguished between what's yours and what's mine. In this case, we're not talking about other people's money. We're talking about a valuable contractual right for a defense of which $2 million was already paid out. And so we think that this case falls within Luis. Now, granted Luis is a Sixth Amendment case, but the courts, as I noted, Patashnik, Anderson, and Roberts have all looked to the Sixth Amendment for guidance in interpreting the Fifth Amendment right here. And secondly, the Stein case also involves a similar factual situation to this. I understand that if that's your argument, you want to talk about the merits, you only have five minutes left. If I don't go with you on the constitution, what's your best argument on the merits? On the statute or on the statutory construction argument? Yeah. Okay. If I could turn to the statutory construction argument, subdivision A of the statute is clear and unambiguous. It distinguishes between insurable and uninsurable remedies. It lists three specific remedies, fines, penalties, and restitution that are prohibited. And it does not list injunctive relief as a prohibited remedy. So our argument is when you look at the statute, subdivision A, right now dealing with the duty to indemnify, you have to conclude that it does not exempt an insurer from indemnifying unfair competition actions seeking injunctive relief. It's not listed in the statute. So what would indemnification of injunctive relief look like? Well, when a court imposes… Now, I would assume in that hypothetical that you're not going to get them to pay for counsel. So what would the indemnification of injunctive relief look like? I think if the court imposes an order that requires that certain actions be taken in order to ensure no future violations… It looks for an order that enjoins you from making false or misleading statements in violation of the FAL. It looks for an order enjoining you from engaging in unfair competition. So what it does is it says you're supposed to do the law. You're supposed to do what the law says you to do. What would indemnification of that be? I think that if there were… The way the policy is phrased, it covers all losses associated with injunctive relief. It does, but it doesn't cover counsel. So what loss is there? You're assuming the argument that we're making with respect to B. I understand, but that's why you started with A. Because you were looking at the plain language. That was your best argument. That's why I went with you. That's what I'm saying. What would injunctive relief be? If that's all you could get was an indemnification of injunctive relief, what would you get? There are many situations in which courts order as part of injunctive relief that a party has to take certain actions. Those actions create costs. Listen, don't argue that because I know what you're going to have to do. I read what the order they want. It just says do what the law tells you to do. So even if you got indemnification, I don't know what you're getting. But we don't know either because the case hasn't been tried. We haven't gone to trial. We don't know what the injunction is going to look like at the end of the day. They also ask for other appropriate relief. So we don't know what the judge is going to do for injunctive relief. But our argument now is as a coverage matter, it's clearly covered by subdivision A. And so then we have to turn and look for what happens with subdivision B. And unlike subdivision A, our position in subdivision B is ambiguous. It applies to claims for a fine, penalty, and restitution, but it doesn't say anything about claims for injunctive relief. Imagine if the statute referred to claims in which punitive damages is sought. I think a reasonable person could read that and say, well, that doesn't mean a claim in which compensatory damages is sought because those are two different remedies. When a statute starts to break down on a remedy-by-remedy basis, you have to go along with that same breakdown on a remedy-by-remedy basis. So our argument is that subdivision B should be construed narrowly to be consistent with subdivision A. This is the interpretation that harmonizes the two statutes. It's the interpretation that's consistent with principles of insurance law, which hold that a duty to defend must be broader than a duty to indemnify. And we think it's compelled by the doctrine of constitutional avoidance. And then finally, we noted that in the Broughton case, the Supreme Court concluded that subdivision B was not susceptible to this proposed interpretation. I'm sorry, that it distinguished between damages, actions, and injunctive relief actions. And I know I'm getting very close on time. If I could reserve the remaining time and maybe just a little bit more for rebuttal, I'd appreciate it. Thank you. May it please the court, Kevin Keefer, Trumman and Sanders, on behalf of STAR. The trial court correctly concluded and interpreted the policy at issue. The policy has a conformance with statute provision in it. So the question is, what does the statute provide? Insurance Code Section 533.5 is a statute. You have to follow the canons of interpretation for statute. The trial court correctly identified those canons and followed each and reached the same conclusion with respect to each of those separate ways of looking at the issue. One, plain meaning. Two, legislative history. And three, what is the reasonable, practical, and common sense way of looking at this problem? With respect to the plain language of the statute, the issue argued in brief below was a question of defense. Subsection B deals with defense, not subsection A. Subsection B of Insurance Code Section 533.5 uses very important words. It prohibits the duty to defend any claim in any action in which a fine, restitution, or penalty is sought when a governmental entity brings the claim under the UCL or FAL. That's it. Nobody disputes that the underlying causes of action here were to UCL, FAL, and in fact, they sought a fine, restitution, or penalty. Subsection C of Insurance Code Section 533.5 also defines the definition of duty to defend. If there could be any question, any potential ambiguity, subsection C answers that. What is the duty to defend? It's the insurer's obligation to defend or settle any claim in any action or proceeding. Any claim in any action or proceeding under the UCL or FAL. Again, brought by the requisite entities. In subsection C, where the statute specifically deals with the duty to defend, there is absolutely zero reference, zero reference to any remedies. The statute defines the duty to defend broadly to include defense and settlement, and it's tied to the particular causes of action and not any remedy. The trial court correctly held when looking at the statute on its face, the plain meaning clearly precludes a duty to defend here. Well, if you look at B and you look at the plain language, you've laid it out, what you're saying, but that doesn't say the same in A as it relates to indemnity. I agree. It doesn't see the same. Therefore, in A, rather than talking about any claim, we're talking any coverage or indemnity for payment, and that's all that they have to indemnify or need not indemnify for a fine, penalty, and restitution. And now we've got an injunction. It's not in there. That is correct. And so that begs the question, what are we supposed to do in this scenario? When admittedly subsection A could be more clear. So what are we supposed to do? What's the next canon of interpretation? The next canon of interpretation is to look at legislative history, and as the Attorney General's Office explained in its amicus brief, injunctive relief is always part and parcel of these actions. It always is. And you look at the legislative history. It's clear that they're worried about having provisional remedies and the right to be able to seek injunctive relief. Let me ask you a question, counsel. Under California law, do I even need to go to the legislative history if the language in the statute is clear and unambiguous? If the language is clear and unambiguous, then you would not go to legislative history. Well, it's very clear. If they wanted to talk about injunctions, they could have put it in there. They knew how to do it. If they wanted to talk about any claim, as they did in B, they could have done it. They knew how to do it. So therefore, they didn't intend to indemnify on injunction. Well, now you're going into interpretation canons, which is not necessarily the question of whether it's clear and unambiguous, right? Well, I understand, but all I'm trying to say is reading the language and trying to—if I'm to say that B is clear and unambiguous, and there's no question where I'm going to go, and it talks about any claim, as you say it does, then I read A, it doesn't put any claim. It just talks about any coverage or indemnity. And it says the only time you don't indemnify or you don't cover is when it's a fine, penalty, or restitution. It doesn't say anything about you don't pay if it's an injunction. And it's clear. But this is where we disagree. I don't believe it's clear. I'm not disagreeing. I'm asking the questions. Okay, well, there's two words there. There's coverage and indemnity. There's coverage and indemnity. That's to suggest that coverage and indemnity aren't the same. Well, I think that's a reasonable interpretation. Coverage and indemnity need not necessarily be the same. Who says it is? Look at Subsection C. That's why. But C does not apply to A. It does in a sense. So if you look at Subsection C. It applies. Now, just a minute. Don't argue that. You're losing me. It says duty to defend. That's what they're talking about in C. Read the entirety of Subsection C. Duty to defend includes the duty to settle. The duty to settle is encompassed with the duty to identify. You don't have a duty to settle defense fees. You have a duty to settle what an indemnity obligation is or what a coverage obligation is. So when you read A and C in context, respectively, A is not, clearly and ambiguously, limited to carving out injunctive relief. That can't be a plausible interpretation when you read it in context. So my point is, when you look at multiple canons of interpretation, when there's a list, it's not included. It suggests it's not included. Agree. That's a canon of interpretation. Another canon is when you have a statute and a series of statutes, you need to look at the entirety of the statute and read the words together to ascertain a common understandable meaning. So when you look at A and C. Do I really need to get to that question here? Because it seems to me that I can look at the insurance policy and it says that it excludes any amount paid or incurred in complying with the judgment or settlement or non-monetary or injunctive relief. So given that the insurance company covers the question, do I need to reach the question you want me to reach? I don't believe you need to reach the question for a different reason. In the underlying, at the trial court level, a deer did not move on duty to indemnify. They moved on duty to defend. So the trial court determined that there was no duty to defend. As a result, Star was entitled to reimbursement under the policy's provision. So, no, you do not need to address that question, but I believe for a different reason rather than the underlying policy. Is there any case law or custom and practice in the insurance industry in defining the term coverage to include both monetary liability and injunctive relief? That is, is the term coverage broader than the term indemnity? I don't know off the top of my head if there's any case law specifically on that, and I don't want to represent to the court one way or the other. What I would say is if you use the word or between coverage and indemnity, use of the term or would suggest that it has a different meaning. And then when you go to subsection C and you're looking at the obligation to settle, an obligation to settle in the insurance context only applies to what you have an obligation to indemnify. So you can't have an obligation to settle unless there's an obligation under the policy to indemnify in the first place. So if you were to say that in subsection A there's a carve-out for injunctive relief and you can indemnify for injunctive relief, then that would be inconsistent with subsection C because subsection C says you don't have a duty to settle injunctive relief because it's not tied to any specific relief. So if I may, I think I'm going to move on to – well, let me just say even if the language wasn't clear in an ambiguous or even if the plain meaning rule didn't apply, again, we're talking about the duty to defend as opposed to the duty to indemnify here, the trial court correctly looked at legislative history. Legislative history, the trial court identified three primary reasons. One, it's impossible to settle in the absence of the statute, you want to hold alleged wrongdoers personally accountable, and a desire to litigate with those actually responsible as opposed to the insurance company. And it's the last part of the puzzle that I think is important, the insurance company. As a practical matter, and this ties into the third insurance candidate, as a practical matter, it would make no sense to have a duty to defend nor would it make any sense to have a duty to indemnify for injunctive relief because as a practical matter, you would not be able to effectuate settlements because you would have disputes between the insurer and the AG's office and the insurer as to whether or not to fund a settlement. And that was the impetus for the statute in the first place. So it wouldn't make practical sense to interpret either A or B as proper by ADIR. Can you address the constitutional law claim? I mean, obviously, for due process violations, a very high bar. On the other hand, I'm not certain what the government's interest is here in denying defense coverage. It's one thing if indemnity or if you have a clawback provision for defense costs, but at the onset of the case, when the government hasn't proven its case at all to deny it, even defense coverage, I mean, what's the government's interest in that? The first question to my mind is what is the ethical standard? And the ethical standard is rational basis. The reason why the ethical standard is rational basis is because California law and U.S. law has long recognized that states have great latitude and defense thereof. So under the rational basis standard, the question is, is there a legitimate basis? Not whether or not the statute actually effectuates that. Is there a legitimate basis? There are three legitimate bases identified in the legislative history and by the Attorney General's office. One is to not have the practical effect of being unable to effectuate settlements. So the problem if you have a carrier defending the case is that the insured says, I'm not going to settle. I'm going to make the carrier pay. That holds true whether you're talking about indemnity or defense because the insured is going to say, look, I have a carrier paying for this. I don't have any responsibility. I don't have any accountability. I have effectively a blank check for the carrier to be able to defend the case. That was the concern identified by the Attorney General's office when they were asking for the bill in the first place. And the key is that it is a limited, right? The statute is limited. The defense doesn't apply to private causes of action under either of the two consumer protection actions. It's also specific to consumer protection actions. So you're involving the situation where you have the government taking action for violations of business practices forbidden by law. It's not a cart launch. It's not anything that they possibly could ever want to do. It's very limited. Two causes of action. Very, very broad. Any unfair, unlawful practice. I mean, it is very broad provision here that the state has. The underlying predicate act still have to be forbidden by law. And so my point is. Which is so amorphous. It can encompass just about anything. Well, we face that argument a lot. And, unfortunately, the courts have looked at it. And that's not the way the courts have analyzed the body of law under those two statutes. There does have to be a specific category of past law saying in cases involving government, in Seattle cases, the defendant can't hire counsel with rates higher than $800 an hour. So you can get actual counsel, but you can't hire, you know, a very large law firm with a very prominent attorney who makes $1,200. Would that ask much service? It would. Because if you look at the micro context, there was specific statutes in the medical malpractice context that put caps on contingency fees. So it's not an hourly rate, but it's a cap on contingency fees. You have statutes that cap attorney fees. You have statutes that cap economic damages. And the argument advanced there was the same argument advanced here. I can't get the lawyer that I want to handle the case. And the courts looked at that rejected argument, applied rational basis and concluded that there was a legitimate business interest for that, and, therefore, the statute must be upheld. That's the applicable law. That's the inquiry. And just in a nutshell, then, the legitimate governmental interest is what exactly in a nutshell? It's accountability or what exactly? It's personal accountability. If you did the wrong, you should defend for the wrong. A. B. Practical inability to settle cases. Because of a carrier's obligation when it defends. When it has to defend, it has obligations. It has to give an independent counsel sometimes. It has to effectuate settlement sometimes. You have obligations on the insurance company that intersect what a government would like to do. A government would like to either get the judgment against the wrongdoer or settle on terms consistent with the liability and damages asserted in the case. If you don't have the statute, the insurance impedes that. That's the interest. That's the reason why the AG needed this statute in the first place. Thank you. Thank you. Yes, Your Honor. If I could just highlight the issue here, the constitutional right that's being impinged upon is the right to use all of your available resources to fund your defense. And that is a core constitutional right. That's not subject to a rational basis standard. And I think if this court looks at the facts of Luis, it really highlights this point. In Luis, the government had a reasonable rational basis for why it wanted to freeze the untainted assets. The defendant in that case was accused of defrauding the government of $45 million. And the government said, we need to freeze the remaining $2 million in untainted assets. So they're going to be available as substitute assets in post trial restitution. So notwithstanding the fact that there was a very strong interest by the government to freeze these assets, the Supreme court said, look, that's not enough, right? Because this right to use all your available funds to fund your, your defense is such a core constitutional right. It outweighs that, right? In fact, that was the basis for the distinction between the majority and the descent, or I should say the plurality and concurring opinion in descent. When the descent said, we think that interest might be enough, but the majority said, no, it's not. The sixth amendment right to counsel overpowers that. And so we're not talking about rational basis review here. We're talking about, is this a sufficiently compelling interest to overweigh that, this fundamental right, right? To be free from the government. I've heard three, three arguments advanced here. One that you need to hold the wrongdoer accountable. Well, here, we don't have any proven wrongdoers. A deer and Mr. Zarkman hadn't been found guilty of any wrongdoing. They've only been accused of wrongdoing, right? This is this interest in holding wrongdoers accountable is fully protected by the duty to indemnify. And it's the same thing with this practical inability to settle. It is well established that a party can find it a defense, even if there is no underlying coverage for indemnity, right? There's no reason why a person who, a defendant who's on the hook can't settle a case when they know that they're on the hook, right? Make the same calculation that litigants do in every context. And then this third reason that's been presented here, this idea of leveling the playing field. Well, that's just ridiculous. The government doesn't have any interest in leveling the playing field against private businesses and individuals that it sues, right? The purpose of the due process rights to protect the people from the government who brings its formidable resources and it's all of its power. When you're a small business and you get served with a complaint like this, you you're in panic because when the government comes against you, it's a big deal. These are bet the company cases. And for many people, they've set aside this piggy bank, right? In their insurance policy. Well, shoot, at least I have my insurance company to protect me, right? I have this duty to defend. And this statute allows the federal government to just flip a switch. No more insurance policy. And the purpose of this statute, the real reason for this statute is to crush anybody, whether they're innocent or guilty, that the government decides to sue. We want to kneecap them. We want to force them to fight with one hand tied behind their back. Okay. Thank you both for your helpful argument. The case has been submitted. And I think that concludes matters and we are adjourned.  Thank you, Your Honors.
judges: N.R. Smith, Kennelly, Lee